## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

EMILIO J. GONZALEZ-ESPINAL,
a.k.a. "Buster,"

**Defendant.**

**Criminal No.** 16-599 (FAB)

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is defendant Gonzalez's motion to suppress contraband and his post-arrest statements. (Docket No. 28.) The United States responded to defendant Gonzalez's motion to suppress, Docket No. 32, and defendant Gonzalez replied, Docket No. 34. The Court referred the matter to Magistrate Bruce J. McGiverin. (Docket No. 30.)

The magistrate judge held a one-day hearing, during which the United States and defendant Gonzalez presented evidence and arguments. (Docket Nos. 40 & 41.) The magistrate judge later issued a Report and Recommendation ("R & R"), recommending that defendant Gonzalez's motion be granted in part, and denied in part. (Docket No. 42.) Both parties filed timely objections to the R & R. (Docket Nos. 55 & 56.) Additionally, each litigant responded to the opposing party's objections. (Docket Nos. 58 & 59.)

For the reasons set forth below, the Court **ADOPTS IN FULL** the magistrate judge's R & R, and **DENIES IN PART** and **GRANTS IN PART** defendant Gonzalez's motion to suppress.

## I.   STANDARD OF REVIEW

A district court may refer a motion to suppress evidence in a criminal case to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Loc. R. 72(a)(6). Any party may file written objections to the report and recommendation, and a party that files a timely objection is entitled to a *de novo* determination of those portions of the report to which specific objection is made. 28 U.S.C. § 636(b)(1); Loc. R. 72(d). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); accord Loc. R. 72(d).

## II.   BACKGROUND

On August 24, 2016, federal law enforcement officers recovered contraband inside of defendant Gonzalez's residence after executing a warrant for his arrest.[1]  DEA Agent Jose Betancourt ("Betancourt") and approximately ten to 12 armed officers from various law enforcement agencies arrived at defendant Gonzalez's residence at 5:10 a.m.  (Docket No. 42 at

---

[1] The arrest warrant was issued in connection with a separate case filed in this district.  See United States v. Herrera-Olavarria, *et al.*, Criminal Case No. 16-526 (JAG).

p. 2.) Agents knocked on the residence's front door, announced their presence, and called out defendant Gonzalez's name for at least 20 minutes. Id. Defendant's mother, Raquel A. Epsinal-Solis ("Espinal"), opened the door when agents attempted to enter the house by force. Id. Defendant Gonzalez stood in the living room. Id. Agent Betancourt handcuffed and arrested defendant Gonzalez. Id.

The agents performed a protective sweep of the residence, and encountered defendant Gonzalez's step-father, Miguel Bare ("Bare"), in a separate bedroom. Id. at p. 3. Agent Betancourt escorted defendant Gonzalez to his bedroom, allowing defendant Gonzalez to dress himself. Id. Agent Betancourt then administered the Miranda warnings to defendant Gonzalez in his bedroom. Id. Less than ten minutes after entering the house, Agent Betancourt placed defendant Gonzalez in a patrol car. Id. U.S. Postal Inspector Eliezer Julian ("Julian") and Puerto Rico Police Department Officer Carlos Concepcion ("Concepcion") informed Agent Betancourt that law enforcement officers observed marijuana inside the residence. Id. Agent Betancourt informed defendant Gonzalez that because Agent Betancourt had no knowledge of who owned the marijuana, law enforcement officers were required to "take everyone in the house." Id. Defendant Gonzalez then admitted that the marijuana belonged to him, and agreed to show agents "everything else" (including firearms and drugs). Id.

Agent Betancourt returned to the residence, and asked Espinal for consent to search the house.  Id. at p. 4.  Espinal signed a consent form.  Id.  Inspector Julian led Agent Betancourt to the laundry room, which possessed a strong odor of marijuana.  Id. Law enforcement officers recovered marijuana from a partially opened plastic bag in addition to a revolver and ammunition inside a backpack located within the laundry room.  Id.

Agent Betancourt asked defendant Gonzalez if there was any additional contraband, to which defendant Gonzalez replied that there was cocaine located inside his bedroom on top of a dresser. Id.  After relocating to defendant Gonzalez's bedroom, agents discovered the baggie of cocaine on top of the dresser.  Id.  Agent Betancourt then searched inside the dresser drawers, discovering a drug ledger and three cellular phones.  Id. Agent Betancourt also seized two additional cellular phones that were on a nightstand.  Id.

Subsequently, defendant Gonzalez informed Agent Betancourt that there was a firearm under his mattress.  Id.  Agent Betancourt then discovered a loaded Smith and Wesson firearm under the mattress.  Id.  Agents then transported defendant Gonzalez to the DEA office in Guaynabo.  Id.

The seizure of contraband from Gonzalez's residence ultimately resulted in a federal grand jury returning an indictment charging Gonzalez with possession of a firearm in furtherance of

a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1),
and possession with intent to distribute marijuana, in violation
of 21 U.S.C. § 841(a).  (Docket No. 1.)

## III. DISCUSSION

Defendant Gonzalez moves to suppress post-arrest statements
and all evidence including: marijuana, a Model 22 Glock pistol, a
Model 10 Smith & Wesson revolver, ammunition, cocaine, a drug
ledger, and five cellular phones.  (Docket No. 28)  In support of
his motion to suppress, defendant Gonzalez contends that: (1) law
enforcement agents failed to obtain valid consent to search the
residence, and that defendant Gonzalez was "mirandized" "after all
the incidents occurred and the defendant made statements during
the search process."  Id. at p. 11.

The magistrate judge recommended that the motion to suppress
be granted as to the drug ledger and three cellular phones
discovered inside defendant Gonzalez's bedroom dresser, but denied
the motion with respect to all other contraband.  The magistrate
judge based his recommendations on the following legal
conclusions:

1.  Defendant Gonzalez had a reasonable expectation of
privacy at the residence he shared with his mother and step-father.

2.  Law enforcement agents lawfully recovered the marijuana
in plain view while conducting a lawful protective sweep of the
residence. (Docket No. 42 at p. 11.)

3.    Defendant Gonzalez gave voluntary consent to search the residence by showing law enforcement agents "everything else," namely, the revolver and ammunition inside the backpack, the baggie of cocaine on top of the dresser, the firearm under the mattress, and two cellphones on defendant Gonzalez's nightstand.  Id. at p. 13.

4.    Defendant Gonzalez, however, did not give express or implied consent to search inside his bedroom dresser, which contained a drug ledger and three cellular phones, and Espinal lacked authority to provide such consent.  Id. at pp. 14-15.

Defendant Gonzalez objects to the magistrate judge's second and third legal conclusions, Docket No. 56, and the United States objects to the fourth legal conclusion, Docket No. 55.  The Court is unpersuaded by both party's objections. Because neither party objects to the magistrate judge's first legal conclusion that defendant Gonzalez had a reasonable expectation of privacy at the residence, the Court will adopt this recommendation without further analysis.

**A.    Protective Sweep**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable

under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." <u>Arizona v. Gant</u>, 556 U.S. 332, 338 (2009) (citation omitted). "A protective sweep conducted in conjunction with an arrest of an individual in his home" is an exception to the warrant requirement. <u>United States v. Winston</u>, 444 F.3d 115, 118 (1st Cir. 2006). Law enforcement officers may perform a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." <u>Maryland v. Buie</u>, 494 U.S. 325, 327 (1990).

        In this case, during the course of the protective sweep, Inspector Julian discovered a "black plastic bag" that was "partially open" and contained a "green leafy substance that [he] suspected was marijuana."[2] (Docket No. 51 at p. 20.) Defendant Gonzalez moves to suppress the marijuana on grounds that the protective sweep occurred beyond the "area of immediate control of the arrestee." (Docket No. 28 at p. 7.) The Court, however, concurs with the magistrate judge's determination that agents based the protective sweep on "articulable facts, which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Docket No. 42 at p. 8 (quoting <u>United States v.</u>

---

[2] Defendant Gonzalez does not object to the magistrate judge's finding as to the location of the marijuana in plain view.

<u>Winston</u>, 444 F.3d 115, 118 (1st Cir. 2006) (holding that the "scope of the protective sweep must be limited to its purpose") (citation omitted).

Indeed, the agents reasonably suspected that they were in danger when executing the warrant for defendant Gonzalez's arrest because: (1) the agents waited at the door for 20 to 25 minutes while announcing their presence and calling out defendant Gonzalez's name, (2) defendant Gonzalez had already been indicted in a drug conspiracy involving several defendants, some of whom may have been inside the house, (3) defendant Gonzalez's step-father remained in his bedroom when agents entered the residence, and (4) the agents were unaware of the residence's layout. (Docket No. 42 at pp. 8-10.) Moreover, the agents conducted a limited and cursory inspection, discovering the marijuana no more than seven to eight minutes after agents initially entered the house. (Docket No. 42 at p. 8.) Because the protective sweep was based on a reasonably perceived threat to the agents' safety, suppression on the basis of an unlawful protective sweep is unwarranted.

**B.  Consent**

In this case, both parties object to the magistrate judge's recommendation regarding consent. Defendant Gonzalez argues that all contraband is inadmissible because "the consent given by [defendant Gonzalez] was not voluntary." (Docket No. 56 at p. 20.) The United States, for its part, takes issue with the

magistrate judge's conclusion that agents exceeded the scope of consent when they seized a drug ledger and three cellphones from inside the drawer of defendant Gonzalez's bedroom dresser.

"Consensual searches are a recognized exception to the Fourth Amendment's warrant requirement, but the government bears the burden to prove by a preponderance of the evidence that defendant or an authorized third party gave the consent voluntarily." United States v. Vanvliet, 542 F.3d 259, 264 (1st Cir. 2008) (internal citations omitted). "The consent may be express or inferred from conduct." United States v. Winston, 444 F.3d 115, 121 (1st Cir. 2011).

With regard to the voluntariness of Gonzalez's consent, the Court agrees with the magistrate judge that Gonzalez's consent was voluntary. In fact, after agents recovered marijuana from the laundry room during the protective sweep, defendant Gonzalez informed them that he would show them "everything else," and led them throughout the residence while identifying the several locations of contraband. (Docket No. 42 at p. 12.) Defendant Gonzalez's argument that he consented involuntarily to the search is not convincing because, as the magistrate judge noted correctly: (1) defendant Gonzalez cooperated with agents, guiding them to the contraband, (2) the agents made no threats, misrepresentations or promises to defendant Gonzalez, (3) defendant Gonzalez received Miranda warnings before he disclosed the locations of the

contraband, (4) defendant Gonzalez gave consent in familiar surroundings, not at a police station, and (5) defendant Gonzalez's demeanor was "peaceful" and "cordial." Id. at pp. 13–14.  These circumstances establish that defendant Gonzalez's consent was given voluntarily.

Adopting the contrary position, defendant Gonzalez asserts that consent to search the residence was coerced and involuntary because Agent Betancourt threatened to arrest his mother and step-father if defendant Gonzalez did not claim ownership of the marijuana, and if defendant Gonzalez did not disclose the location of additional contraband.[3] (Docket No. 56 at p. 20.)  The court disagrees.

Agents recovered the marijuana in a common area, specifically the laundry room.  Defendant Gonzalez, his mother, and his step-father share the residence, and were present during the search.  (Docket No. 42 at pp. 2-3.)  Without more, these circumstances would suggest that defendant Gonzalez, his mother, and step-father constructively possessed the marijuana.  See United States v. Garcia-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007) ("Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and

---

[3] Agent Betancourt testified at the suppression hearing that he did, indeed, ask defendant Gonzalez "[w]hy do you lie to me?"  (Docket No. 42 at p. 3.)  Moreover, Agent Betancourt confirmed that he informed defendant Gonzalez that because law enforcement had no knowledge of whom the marijuana belonged to, Agent Betancourt must "take everyone in the house." Id.

control over an object either directly or through others.")
(citation omitted). Agent Betancourt based his statement
regarding the possible arrest of all individuals in the residence
on circumstantial evidence, including the location of the
recovered marijuana. See United States v. Dillard, 983 F.2d 1069
(6th Cir. 1992) (concluding that threat to arrest defendant's
mother was not coercive because the police had probable cause to
arrest mother); United States v. Melendez, Case No. 14-838, 2015
U.S. Dist. LEXIS 78894 (S.D.N.Y. 2015) (threat to arrest everyone
in the apartment, including elderly father, was not so improperly
coercive as to render consent involuntary) (citing United States
v. Ortiz, 943 F. Supp. 2d 447, 456 (S.D.N.Y. 2013) ("a threat to
arrest a suspect's family member [. . .] does not render a
confession involuntary if the police had probable cause to arrest
the family member and thus could lawfully carry out the threat.")).
Accordingly, there is no basis to suppress the firearms,
ammunition, cocaine, all of which were recovered after Gonzalez
voluntarily led the agents to the contraband.

The United States objects to the magistrate judge's
finding that "there is insufficient evidence to show that
[defendant] Gonzalez expressly or impliedly consented to the
search that revealed [a drug ledger and three cellular phones]."
(Docket No. 42 at p. 14.) The United States argues that the
magistrate judge erred because the search of the dresser was

pursuant to Espinal's lawful consent.  Additionally, for the first time, the United States argues that the search of the dresser was conducted pursuant to a lawful search incident to arrest.  (Docket No. 55 at p. 2.)  Neither argument persuades the Court to reject the recommendations set forth in the R & R.

Defendant Gonzalez and his mother, Espinal, both consented to a search of the residence.  The United States raises no objections to the magistrate judge's finding that "there is insufficient evidence to show that [defendant] Gonzalez expressly or impliedly consented to the search that revealed [the drug ledger and cellular phones]."  (Docket No. 42 at p. 14.)  The United States, however, contends that Espinal and defendant Gonzalez shared common authority over the house, permitting Espinal to give consent to search the dresser inside defendant Gonzalez's bedroom. See Docket No. 55 at p. 55 (citing United States v. Matlock, 415 U.S. 164 (1974)).  The United States further asserts, for the first time in its objection to the R & R, that Espinal had apparent authority over the dresser located inside defendant Gonzalez's bedroom because the officers reasonably believed that she had actual authority to consent to the search.[4]  Id.  The Court is not convinced.

---

[4] The United States bears the burden of establishing common authority and apparent authority.  See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

To establish common authority, the United States must demonstrate that "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." United States v. Cordero-Rosario, 786 F.3d 64 (1st Cir. 2015). The magistrate judge relied upon the suppression hearing testimony in concluding that Espinal lacked common authority.[5] (Docket No. 42 at p. 15.) The Court agrees.

The following facts negate common authority over defendant Gonzalez's bedroom dresser: Gonzalez shared his room with no one else, contributed to the rent payment, and defendant Gonzalez required his family to obtain permission before entering his room. Id; see United States v. Jimenez, 419 F.3d 34, 40 (1st Cir. 2005) (woman living with defendant lacked common authority where defendant had his own room, the woman did not regularly enter, and did not have a key to defendant's room). Consequently, the United States failed to establish that Espinal shared common authority over defendant's bedroom.

---

[5] The United States raised an apparent authority argument for the first time in its objection to the R & R, making "no effort whatsoever to show that 'apparent' authority doctrine is applicable in the circumstances of this case." (Docket No. 42 at p. 15.) The Court requests that the United States in the future present all arguments before and during a suppression hearing so that the magistrate judge may resolve fully and accurately all matters referred to him or her by this Court. Defendant Gonzalez responded to the United States' objection to the R & R, which sets forth the apparent authority argument, in its response to the United States' Objection to the R & R. (Docket No. 59.)

Furthermore, the United States argues that Espinal possessed apparent authority over defendant Gonzalez's bedroom. (Docket No. 55 at p. 3.)  To analyze an apparent authority, courts examine whether the law enforcement officer "reasonably believes that the person has actual authority to consent to the search." United States v. Gonzalez, 609 F.3d, 13, 18 (1st Cir. 2010).  In turn, the Court must assess whether the agents reasonably believed that Espinal possessed authority over defendant Gonzalez's bedroom dresser not at the suppression hearing, but at the time of the search.  Id.  ("A search is valid if, at the time, officers reasonably believe a person who has consented to a search has apparent authority to consent, even if the person in fact lacked that authority.")

Agent Betancourt testified that defendant Gonzalez informed him that Espinal rented the house and paid rent.  Id. Based on this information, Agent Betancourt requested Espinal's consent to search the residence.  Id.  Agent Betancourt received written consent from Espinal, who placed no restrictions on the officer's search of the house.  Id.  Without more, the United States cannot establish that Espinal, a third party, had authority to consent to a search of the dresser inside defendant Gonzalez's bedroom.  Illinois v. Rodriguez, 497 U.S. 177, 179-80 (1990) (holding that if the circumstances as to whether the property about to be searched is subject to mutual use are unclear, "then

warrantless entry is unlawful without further inquiry."). The United States concludes generally that a "mother has access to the bedroom of a son who still lives at home for usual household activities." (Docket No. 55 at p. 5.) Perhaps this statement holds true for minor children. Defendant Gonzalez, however, is an adult and the United States offered no evidence that Espinal regularly entered defendant Gonzalez's bedroom, let alone accessed the contents of his dresser. See United States v. Whitefield, 939 F.2d 1071 (D.C.C. 1991) ("The agents in this case had no way of knowing whether parents usually do not permit their adult sons and daughters to have exclusive use of the rooms they occupy and they made no effort to find out whether [defendant's mother] had this or some other arrangement with her son.").

Because the United States failed to meet its burden of establishing Espinal's common or apparent authority, the Court cannot hold that Espinal's consent to search the residence extended to defendant Gonzalez's bedroom dresser. Consequently, the drug ledger and the three cellular phones recovered from this dresser are suppressed.

**C.    Search Incident to a Lawful Arrest**

The United States' argument that law enforcement agents obtained the drug ledger and three cellular phones during a search

incident to a lawful arrest is similarly unconvincing.[6]  A search
incident to a lawful arrest is one of the few exceptions to the
general rule that "searches conducted outside the judicial
process, without prior approval by judge or magistrate, are *per se*
unreasonable under the Fourth Amendment." United States v. Matias-
Maestres, 738 F.Supp. 2d 281, 286 (D.P.R. 2010) (Besosa, J.)
(citation omitted).  The search incident to a lawful arrest
exception "derives from interests in officer safety and evidence
preservation that are typically implicated in arrest situations."
Id.  The United States failed to demonstrate that officer safety
and preservation of evidence, the two rationales justifying the
search incident to arrest exception, were implicated in this case.
When Agent Betancourt opened the bedroom dresser, defendant
Gonzalez was detained and surrounded by agents.  (Docket No. 51 at
p. 24.)   Indeed, Agent Betancourt had previously handcuffed
defendant Gonzalez.  (Docket No. 42 at p. 2.)

        The cases cited by the United States in support of its
objection to the R & R are distinguishable because the arrestees
in those instances threatened to destroy evidence and compromised
officer safety.  See United States v. Nascimento, 491 F.3d 25, 51
(1st Cir. 2007) (police officers felt threatened and reasonably
believed that the defendant would destroy evidence in nearby

---

[6] The R & R did not address the search incident to a lawful arrest issue because
the United States, again, first advanced this argument in its objection to the
R & R.  (Docket No. 55.)

closet); <u>United States v. Tejada</u>, 524 F.3d 809, 811 (7th Cir. 2008) ("The defendant identified himself as a dangerous person by resisting arrest and reaching for a gun even though he knew a crowd of officers were indeed law enforcement officers."); <u>United States v. Romero</u>, 452 F.3d 610, 614 (6th Cir. 2006) (defendant refused to show his hands to police officers and glanced repeatedly at a nightstand); <u>United States v. Abdul-Saboor</u>, 85 F.3d 664, 668-68 (D.C. Cir. 1996) (defendant attempted to retrieve a gun).

In contrast to the arrestees involved in the cases cited by the United States, defendant Gonzalez was respectful, cordial, and complied with the agents' instructions throughout the arrest and search of the residence. (Docket No. 51 at p. 33.) The United States presents no evidence that the agents felt threatened by defendant Gonzalez, or that they feared defendant Gonzalez might destroy evidence. <u>See</u> <u>United States v. Arroyo-Medina</u>, Case No. 15-083, 2016 U.S. Dist. LEXIS 5575 *33 (D.P.R. 2016) (Dominguez, J.) (suppressing evidence recovered during an invalid search incident to arrest because when the agent opened the dresser, "there was no real possibility that defendant could reach the gun subsequently found inside the fannypack."); <u>United States v. Goudreau</u>, Case No. 14-1019, 2015 U.S. Dist. LEXIS 45279 *8-11 (D.Mass. 2015) (holding the search incident to a lawful arrest exception inapplicable where officers surrounded defendant). In sum, the

search of the dresser leading to the seizure of the drug ledger and three phones was not a valid search incident to arrest.

### D.  Post-Arrest Statements

Defendant Gonzalez contends that the magistrate judge erred by denying defendant Gonzalez's motion to suppress post-arrest statements.  (Docket No. 56 at p. 22.)  Essentially, defendant Gonzalez claims, for the first time in his objection to the R & R, that "[e]ven if [defendant Gonzalez] had been properly warned of his Miranda Rights, his statements were involuntary because he 'was coerced into confessing.'"[7]  Id. at p. 23. Defendant Gonzalez fails to provide any facts indicating that law enforcement officers coerced defendant Gonzalez, or that the statements he made were involuntary.  There is thus no basis to suppress defendant Gonzalez's post-arrest statements.

## IV.  CONCLUSION

Having made an independent examination of the entire record in this case, including the defendant's and the United States' objections, the Court **ADOPTS IN FULL** the magistrate judge's findings and recommendations.  Accordingly, defendant Gonzalez's motion to suppress is **GRANTED** in part, and **DENIED** in part.  (Docket

---

[7] In the motion to suppress, defendant Gonzalez claimed only that agents failed to provide defendant Gonzalez with the Miranda warnings.  (Docket No. 28 at p. 11.)  The R & R is correct in that this argument is meritless. (Docket No. 42 at p. 17.)  The magistrate observed accurately that "[Agent] Betancourt testified that he advised Gonzalez of the Miranda warnings shortly after he was arrested and before any questioning.  Id.  No evidence was presented to contravene this testimony.  Id.

No. 28.)  Only the drug ledger and the three cell phones discovered inside defendant Gonzalez's bedroom dresser are suppressed. Defendant Gonzalez's motion to suppress is **DENIED** as to the remaining cellular phones, marijuana, ammunition, Model 22 Glock pistol and Model 10 Smith and Wesson Revolver.  (Docket No. 28.) Defendant Gonzalez' motion to suppress is also denied as to his post-arrest statements.  <u>Id</u>.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 26, 2017.


                                   <u>s/ Francisco A. Besosa</u>
                                   FRANCISCO A. BESOSA
                                   UNITED STATES DISTRICT JUDGE